IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ING BANK, fsb,

                Plaintiff,

        v.

CHANG SEOB AHN, et al.,

                Defendants.

NO. C09-0995 TEH

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT AND
MOTION TO STRIKE

     This matter came before the Court on December 14, 2010, on the parties' motions for summary judgment and motion to strike. For the reasons set forth below, the motion for summary judgment filed by Plaintiff and Counterdefendant ING Bank, FSB ("ING") is GRANTED IN PART and DENIED IN PART. The motions for summary judgment and motion to strike filed by Defendants and Counterclaimants Changseob Ahn and Sookhee Ahn ("the Ahns") are DENIED.

**BACKGROUND**

     In 2007, the Ahns took out a loan from ING in order to refinance two mortgages on their single-family home at 2917 Spanish Bay Drive in Brentwood, California. They negotiated the loan with Bona Financial Group, Inc. ("Bona"), a loan broker. The negotiations were conducted entirely in Korean between the Ahns and Kathy Park, a loan officer with Bona. On a previous motion for summary judgment, this Court held that Bona's failure to translate loan documents into Korean violated section 1632 of the California Civil Code ("section 1632").

United States District Court

For the Northern District of California

1    Bona and ING began working together in 2006.[1] They entered into a contract that

2  authorized Bona to solicit prospective borrowers for residential mortgage loans to be

3  underwritten by ING. The contract is a thirteen-page document that explains Bona's

4  responsibilities as a broker of ING loans.[2] Its requirements range from the general – follow

5  all laws, communicate with borrowers, submit accurate information – to the specific – obtain

6  the borrower's signature on the application, coordinate the collection of documentation,

7  ensure that borrowers sign an agreement disclosing that ING and Bona have a contractual

8  relationship. The contract also provides that Bona was not an agent of ING, and that Bona

9  was free to solicit loans on behalf of other mortgage lenders. In return for Bona's services

10  brokering ING loans, ING paid Bona three percent of each loan brokered.

11    Bona completed two loan applications on the Ahns' behalf, and each contained a

12  different and incorrect figure overstating the Ahns' income. The Ahns also submitted pay

13  stubs to Bona, and the pay stubs correctly stated their income as roughly 60 percent of the

14  figures submitted in the loan applications. Bona sent these pay stubs to ING, which had them

15  in its possession as of April 17, 2007. On April 23, 2007, the Ahns executed a promissory

16  note in favor of ING in the principal amount of $728,000. The note was secured by a deed of

17  trust, which was executed by the Ahns on the same day and recorded on April 30, 2007.

18  Upon closing of escrow, ING paid Bona $6,355 for its services.

19    The note and deed of trust require the Ahns to make monthly principal and interest

20  payments, and the Ahns admit that they are in default because they stopped making these

21  payments. In March 2009, ING filed suit against the Ahns and Bona for fraud, judicial

22

23    [1] Both the Ahns and ING object to evidence presented by their opponents. The Ahns
24  object to ING's alleged reliance upon statements made in the course of settlement
   negotiations. This evidence is irrelevant to the Court's analysis in this order. ING objected to
25  a declaration filed by Sookhee Ahn on November 8, 2010, arguing that the declaration is
   incompetent because it was prepared without an interpreter. This objection is meritless. The
26  fact that the Ahns are protected by section 1632 does not mean that they require an
   interpreter to prepare a competent declaration.

27    [2] The contract incorporates an online document titled "Wholesale Product
   Guidelines." While the Ahns refer to this document by name, they do not cite its contents or
28  explain how it supports their arguments.

2

foreclosure, and declaratory relief.[3] The Ahns filed a counterclaim against ING and Bona alleging fraud, unfair business practices, and violation of section 1632. The parties filed motions for summary judgment on July 30, 2010, and August 9, 2010, and these motions were continued pending completion of discovery. The Ahns filed a subsequent motion for summary judgment on November 8, 2010, and a motion to strike on November 18, 2010. These motions are now before the Court.

**LEGAL STANDARD**

Summary judgment is appropriate where there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The Court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255. The Court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp.v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). However, on an issue for which its opponents will have the burden of proof at trial, the moving party can prevail merely by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party meets its

[3] Bona was dismissed by ING as a defendant in this case.

United States District Court

For the Northern District of California

3

1   initial burden, the opposing party must "set out specific facts showing a genuine issue for

2   trial" to defeat the motion. Fed. R. Civ. P. 56(e)(2); *Anderson*, 477 U.S. at 256.

3

4   **DISCUSSION**

5          There are four motions pending before this Court, three of which are motions for

6   summary judgment. While the summary judgment motions touch upon a variety of claims in

7   this case, they boil down to four main issues, which are analyzed below: (1) whether ING is

8   liable to the Ahns for Bona's failure to comply with section 1632, and if so, what is the

9   appropriate remedy; (2) whether ING is entitled to judicial foreclosure; (3) whether ING has

10  proven that the Ahns are in breach of contract; (4) whether ING's fraud claim against the

11  Ahns should be dismissed; and (5) whether the Ahns' affirmative defenses should be

12  dismissed.

13         The Ahns have also filed a motion to strike ING's supplemental memorandum

14  supporting summary judgment. The Court did not rely upon this memorandum, but the

15  motion is DENIED in light of the fact that the Ahns proffered their own novel theories in a

16  separate motion for summary judgment. Each side has had an opportunity to respond to their

17  opponents' new arguments.

18

19  **I. ING's Liability Under Section 1632**

20         This Court has already determined that Bona violated section 1632 by failing to

21  furnish the Ahns with a Korean translation of their loan agreement after negotiating with the

22  Ahns entirely in Korean. Order Granting Countercls.' Mot. for Summ. J. (May 13, 2010).

23  The Ahns contend that ING is liable for Bona's illegal conduct. They refer to several

24  theories, chief among them that that Bona was acting as ING's agent when it negotiated the

25  loan. ING denies responsibility for Bona's actions, and in the alternative contends that this

26  issue raises questions of fact for the jury.

27         Loans secured by real property are covered by section 1632 as long as they are

28  negotiated by a real estate broker and "for use primarily for personal, family or household

*United States District Court*
For the Northern District of California

4

United States District Court

For the Northern District of California

purposes." Cal. Civ. Code § 1632(b)(4) (extending statute's protection to loans subject to section 10240 of the California Business and Professions Code, which includes real property loans negotiated by real estate brokers). The statute imposes the duty of translation upon the negotiator – here the broker. Cal. Civ. Code § 1632(b). Other parties to a brokered loan can also be liable, however. *Alvara v. Aurora Loan Servs., Inc.*, No. C09-1512, 2009 U.S. Dist. LEXIS 50365, at *10 (N.D. Cal. June 16, 2009). "[S]o long as the defendant has an agency relationship with a broker or was acting as a broker," the defendant is liable under section 1632. *Id.*

The Ahns argue other theories of liability for lenders under section 1632. However, courts faced with this question have consistently held that for a lender to be liable under section 1632, the lender must have acted as a broker or have an agency relationship with a broker. *See Castaneda v. Saxon Mortg. Serv., Inc.*, 687 F. Supp. 2d 1191, 1200 (E.D. Cal. 2009) (granting motion to dismiss because plaintiffs fail to allege that defendants were brokers); *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159, 1167 (S.D. Cal. 2009) (granting motion to dismiss because plaintiffs failed to allege that defendant acted as a broker or had a principal-agent relationship with the broker who negotiated the loan); *Delino v. Platinum Cmty. Bank*, 628 F. Supp. 2d 1226, 1234 (S.D. Cal. 2009) (granting motion to dismiss because plaintiff did not allege defendants were brokers); *Munoz v. Int'l Home Capital Corp.*, No. C03-01099, 2004 U.S. Dist. LEXIS 26362, at *27-28 (N.D. Cal. May 4, 2004) (denying motion to dismiss because plaintiffs argued that broker activities were attributable to defendant lender under rules of agency); *Gonzalez v. Ameriquest Mortg. Co.*, No. C03-0405, 2004 U.S. Dist. LEXIS 22705, at *25-26 (N.D. Cal. Mar. 1, 2004) (denying motion to dismiss because plaintiff alleged lender was acting as a real estate broker). This

Court agrees. The Ahns' alternative theories are misplaced.[4] Because the Ahns do not argue that ING acted as a broker, the Court's analysis will focus on agency.

In California, "[t]he law indulges no presumption that an agency exists but instead presumes that a person is acting for himself and not as the agent for another." *Walsh v. Am. Trust*, 7 Cal. App. 2d 654, 659 (1935). The Ahns argue that Bona was acting as ING's agent, and thus the Ahns have the burden of proving an agency relationship in this case.

"An agency is either actual or ostensible." Cal. Civ. Code § 2298. Actual agency arises "when the agent is really employed by the principal." Cal Civ. Code § 2299. The parties agree that "the most important factor of an agency or employee relationship is the right to control the manner and means of accomplishing the result desired." *Stilson v. Moulton-Niguel Water Dist.*, 21 Cal. App. 3d 938, 936 (1971). "A finding of the right to control employment requires . . . a comprehensive and immediate level of 'day-to-day' authority over employment decisions." *Doe I v. Wal-mart Stores, Inc.*, 572 F.3d 677, 682-83 (9th Cir. 2009) (quoting *Vernon v. State*, 116 Cal App. 4th 114, 131 (2004). While other factors are typically considered in an agency analysis, *see id.* at 936-37, the Ahns' analysis ignores all but one of them – whether the alleged agent has the power to alter legal relations between the principal and others. *Vallely Investments, L.P. v. Bancamerica Commercial Corp.*, 88 Cal. App. 4th 816, 826 (2001). Agency is typically a question of fact, but where only "one inference can reasonably be drawn from the evidence . . .  the question of whether one is an employee or an independent contractor becomes one of law for the court." *Stilson*, 21 Cal. App. 3d at 936.

The Ahns' agency analysis focuses upon (1) whether Bona had the power to alter ING's legal relationships, and (2) whether ING had the right to exert control over Bona. As

---

[4] The Ahns' fairness arguments occupied most of their oral argument. They argued that borrowers are without a remedy under section 1632 if lenders are not liable under the statute. However, this Court's holding grants borrowers a remedy against lenders if borrowers show that the lender was acting as a broker or had a principal-agent relationship with a broker. The Ahns' papers also include theories of nondelegable duty and willful blindness, which do not apply for the reasons stated above. ING's rebuttal arguments, submitted to the Court by letter on December 14, 2010, are thus irrelevant.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

to the former, the Ahns argue that because Bona's violation of section 1632 triggers rescission, and rescission of the loan negotiated by Bona would alter legal relations between ING and the Ahns, this factor supports an agency relationship. This is a circular argument. The Ahns have no rescission remedy against ING unless they can show that Bona was its agent. Relying upon the remedy that would flow from an agency relationship to prove agency is unpersuasive. Furthermore, as ING points out, the loan documents signed by ING and the Ahns did not give Bona the power to alter them.

The Ahns also fail to persuade the Court that ING had the right to exert the kind of control over Bona that gives rise to an agency relationship. As the court in *Stilson* makes clear,

> the control which an owner may exert in his general supervisory power over work done at his behest may be a broad general power of supervision without changing a relationship from employer-independent contractor to one of agency. The owner may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract - including the right to inspect, the right to stop the work, the right to make suggestions or recommendations as to details of the work, the right to prescribe alterations or deviations in the work - without changing the relationship from that of owner and independent contractor or the duties arising from that relationship.

21 Cal. App. 3d at 936 (citations and quotations omitted). The control that gives rise to agency is comprehensive, immediate, and day-to-day, *see Doe I*, 572 F.3d at 682-83, while control that is supervisory and even prescriptive may not indicate agency, *see Stilson*, 21 Cal. App. 3d at 936.

The Ahns make several broad statements about the control ING exerted over Bona. They point out that ING's contract with Bona is "replete with directives, mandates and responsibilities with which Bona was obligated to comply in exchange for ING's commission payment." Defs./Countercls.' Mot. 9:21-22. The Ahns contend, without including citations to the record, that ING controlled Bona's work at all stages of the loan negotiation. They claim, without citing, that ING mandated the use of a form contract. They point out that the contract required Bona to comply with all laws. They note that ING apparently required Bona to

United States District Court

For the Northern District of California

1   retrieve 18 pieces of information missing from the Ahns' loan application. Much of the

2   Ahns' analysis of these facts is conclusory. What is not conclusory is either not supported by

3   facts in the record, or not nearly comprehensive enough to suggest that ING was doing

4   anything other than supervising an independent contractor.

5       The Ahns also quote provisions of the contract as though the level of control they

6   convey is self evident. These provisions set forth many requirements. Under the contract,

7   Bona must (1) ensure that borrowers sign a disclosure agreement; (2) analyze the borrower's

8   income and debt; (3) describe to the borrower the types of loan products available; (4)

9   complete borrowers' application; (5) obtain the borrower's signature on the application; (6)

10  coordinate the collection of documentation; (7) order appraisals and inspections, if necessary;

11  (8) assist the borrower in understanding and resolving credit issues; (9) communicate

12  regularly with the borrower and gather additional documentation, if necessary; (10) facilitate

13  the signing of closing documents; (11) disclose the relationship between ING and Bona; and

14  (12) certify it provided these services.

15      As the Ahns see it, "the only thing missing from ING's supervision of Bona's work

16  was express verification that California Civil Code section 1632 had been complied with."

17  Defs./Countercls.' Reply 11:1-2. The Ahns misapprehend agency law. Hiring an independent

18  contractor does not require relinquishment of supervisory powers. The law merely requires

19  that day-to-day management of the independent contractor's business be left to the

20  independent contractor. Here, it was. Bona was free to keep any hours it chose. It was free to

21  decide how best to educate borrowers about the lending process, and decide which appraiser

22  to hire. Bona decided how much contact with borrowers was regular enough, and what to say

23  to keep them informed. The contract expressly told Bona to modify disclosure agreements

24  "as necessary or appropriate to comply with any applicable state or local laws or practice."

25  Defs./Countercls.' Mot. Ex B.

26      Other aspects of the contract between ING and Bona negate an agency relationship.

27  The contract contains a provision disclaiming an agency relationship, and while this

28  provision is not dispositive, it is a factor to be considered. *Stilson*, 21 Cal. App. 3d at 937

United States District Court

For the Northern District of California

1   (considering "whether or not the parties believe they are creating the relationship of

2   employer-employee"). Furthermore, Bona was free to broker loans for other lenders,

3   according to the contract. Similar facts have led other courts to find no agency relationship.

4   *See, e.g., Hawthorne*, 489 F. Supp. 2d at 484-85 (granting summary judgment in favor of

5   mortgage lender because the facts alleged were insufficient to show an agency relationship,

6   and the broker agreement stated that the broker was not the lender's agent). The evidence

7   presented by the Ahns supports one inference – that Bona was acting as an independent

8   contractor when it brokered the Ahns' loan.

9       Actual agency is the focus of the parties' papers, but ostensible agency is mentioned

10  in the Ahns' motion. Ostensible agency arises "when the principal intentionally, or by want

11  of ordinary care, causes a third person to believe another to be his agent who is not really

12  employed by him." Cal. Civ. Code § 2300. The Ahns reference the theory of ostensible

13  agency in a footnote, and cite no evidence and offer no analysis in support of their contention

14  that the theory applies here.

15      Therefore, the Ahns' motion for summary judgment as to ING's fourth claim for

16  declaratory relief is DENIED. Because all issues relating to rescission are moot in light of the

17  lack of agency between ING and Bona, ING's motion for summary judgment as to the

18  material fact of the Ahns ability to tender under the Ahns' first and second cause of action is

19  DENIED, as is the Ahns motion for summary judgment regarding their right to rescind under

20  section 1632.

21

22  **II. Judicial Foreclosure**

23      ING brings its third cause of action for judicial foreclosure under California Civil

24  Code section 726(a). California Civil Code section 726(a) provides that

25          the court may, by its judgment, direct the sale of the encumbered
            real property or estate for years therein (or so much of the real
26          property or estate for years as may be necessary), and the
            application of the proceeds of the sale to the payment of the costs
27          of court, the expenses of levy and sale, and the amount due
            plaintiff, including, where the mortgage provides for the payment
28          of attorney's fees, the sum for attorney's fees as the court shall

United States District Court

For the Northern District of California

1

find reasonable, not exceeding the amount named in the mortgage.

2

The elements of a foreclosure claim require proof of (1) an obligation, such as execution of a

3

note; (2) the security: execution of the mortgage or deed of trust and its recordation; (3)

4

default by mortgagor; (5) interests of defendants other than mortgagor; and (6) attorneys'

5

fees and other expenses. 5 Witkin, Cal. Procedure, §675.

6

The Ahns concede that they are in default under the note, which requires the Ahns to

7

"pay the full amount of each monthly payment on the date it is due." Pl.'s Mot. Ex. D at 27;

8

Pl.'s Mot. Ex. F at 43-44 (offering deposition testimony in which Mr. Ahn answers yes to the

9

question, "So the only loan that you're in default on is the one to ING Bank, correct?"). The

10

deed of trust signed by the Ahns provides that "[b]orrower shall be in default if, during the

11

Loan application process, Borrower or any persons or entities acting at the direction of

12

Borrower or with Borrower's knowledge or consent gave materially false, misleading, or

13

inaccurate information or statements to Lender (or failed to provide Lender with material

14

information) in connection with the Loan. Material representations include, but are not

15

limited to, representations concerning Borrower's occupancy of the Property as Borrower's

16

principal residence." Pl.'s Mot. Ex. E at 33. Because it is undisputed that the Ahns have not

17

been making monthly payments under the terms of the Note, it is not necessary to reach the

18

question of whether there is a genuine issue of material fact as to whether the Ahns

19

intentionally made false representations to ING in their loan applications.

20

The Ahns only defense to ING's foreclosure claim is that the note and deed of trust

21

should be rescinded pursuant to section 1632(k). However, because the above analysis shows

22

that ING is not liable to the Ahns under section 1632, rescission is not a defense to judicial

23

foreclosure. At the hearing, both parties averred that no one but ING has an interest in the

24

Ahns' home. Therefore ING's motion for summary judgment as to its third claim for relief

25

for judicial foreclosure is GRANTED.

26

27

28

**III. Breach of Contract**

At the hearing and in a supplemental reply in support of ING's motion for summary judgment, ING argued that it is entitled to summary judgment on its first cause of action against the Ahns for breach of contract. However, ING's motion for summary judgment contains no analysis of its breach of contract claim, and its subsequent arguments contend that because the Ahns admit they are in default on their ING loan, they are also liable for breach of contract. However, ING offers no authority showing that default for the purposes of judicial foreclosure constitutes breach of contract. Therefore ING's motion for summary judgment as to its first cause of action for breach of contract, insofar as it was before the Court, is DENIED.

**IV. Fraud**

The Ahns move for summary judgment on ING's second claim for relief for fraud. While ING appears to have abandoned the argument that the Ahns fraudulently misrepresented that they would live in the mortgaged house as their principal residence, it continues to argue that the Ahns are liable for submitting false income figures in their loan applications. The elements of fraud are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. Cal. Civ. Code § 1709; 5 Witkin, Summary of California Law, Torts § 772 (10th ed.2005). Justifiable reliance and intent are at issue here.

The Ahns argue that because ING received pay stubs that accurately represented the Ahns' income, as well as two loan applications with different and false income statements, ING's reliance on the loan applications was not justifiable. For a party's reliance to be justified, circumstances must be "such a to make it reasonable for plaintiff to accept the defendant's statements without an independent inquiry or investigation." *Id.* at § 812. "A plaintiff who has access to the necessary information and actually makes an independent investigation that the defendant does not hinder will be charged with knowledge of the facts that reasonable diligence would have disclosed and cannot claim reliance on the

representation." *Id.* at § 809. The Ahns are correct that if ING knew about the conflicting figures and approved the loan anyway, its reliance would not likely have been reasonable. However, there is no evidence that the person responsible for approving the Ahns' loan knew about the conflicting figures. Nor does either party prove that ING made an investigation into the Ahns' income other than to follow the routine practice of gathering pay stubs. The facts – that ING had conflicting income information in its possession – are not enough to show that reliance on incorrect figures was unreasonable as a matter of law. "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1239 (1995). Reasonable minds could read these facts differently, and thus summary judgment is not appropriate.

The Ahns seem to make several other arguments. First, they argue that ING had a duty to investigate the Ahns actual income, or at least compare the income information in its possession. They cite no authority in support of this argument. Second, the Ahns argue that they did not intend to deceive ING because they did not know that Bona submitted inflated income figures. They note that Kathy Park, a loan officer with Bona, cannot recall whether the Ahns reviewed their loan applications before signing them. However, the fact that the Ahns signed their loan applications creates a question of fact for the jury. Third, the Ahns argue that ING's fraud claim fails on a theory of willful blindness. The Ahns cite no authority suggesting that this doctrine applies, and the fact that ING sought and received the Ahns' pay stubs does not support a theory that ING attempted to insulate itself from the facts. The Ahns' motion for summary judgment as to ING's fraud claim is DENIED.

## V. Affirmative Defenses

The Ahns allege eight affirmative defenses in their answer to ING's SAC – insufficient facts, failure to mitigate damages, waiver, section 1632, bad faith, consent, unclean hands, and laches. ING moves for summary judgment on all of them.

Under both state and federal law, the party pleading an affirmative defense has the burden of proving it. *Hinerfeld-Ward, Inc. v. Lipian*, --- Cal. Rptr. 3d ----, 2010 WL 3431831, at *4 (Cal. App. 2010); *Taylor v. Sturgell*, 128 S.Ct. 2161, 2179-80 (2008). With the exception of their defense resting on rescission under section 1632, which the above analysis shows is unavailable, the Ahns have not produced any evidence or argument regarding their seven other affirmative defenses. Therefore, summary judgment is GRANTED as to the Ahns' affirmative defenses.

**CONCLUSION**

For the reasons set forth above, the Ahns' motions for summary judgment and motion to strike are DENIED. ING's motion for summary judgment is GRANTED IN PART and DENIED IN PART. It is GRANTED as to ING's claim for judicial foreclosure and the Ahns' affirmative defenses. It is DENIED as to breach of contract and rescission.

**IT IS SO ORDERED.**

Dated: 12/20/10

_____
THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

United States District Court
For the Northern District of California